**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of _____

Case number *(If known):* _____ Chapter 15

☐ Check if this is an
amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | | |
|---|---|---|
| 1. | **Debtor's name** | _____ |

| | | |
|---|---|---|
| 2. | **Debtor's unique identifier** | **For non-individual debtors** |

☐ Federal Employer Identification Number (EIN)    ___ ___ – ___ ___ ___ ___ ___ ___ ___

☐ Other _____. Describe identifier _____.

**For individual debtors**

☐ Social Security number:    xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____.

| | | |
|---|---|---|
| 3. | **Name of foreign representative(s)** | _____ |

| | | |
|---|---|---|
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | _____ |

| | | |
|---|---|---|
| 5. | **Nature of the foreign proceeding** | *Check one:* |

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

| | | |
|---|---|---|
| 6. | **Evidence of the foreign proceeding** | ☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached. |

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

| | | |
|---|---|---|
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.) |

☐ Yes

Debtor _____    Case number (*if known*)_____
        Name

---

**8. Others entitled to notice**    Attach a list containing the names and addresses of:

(i)    all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)    all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii)    all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**    **Country where the debtor has the center of its main interests:**    **Debtor's registered office:**

_____

_____
Number        Street

_____
P.O. Box

_____
City          State/Province/Region    ZIP/Postal Code

_____
Country

**Individual debtor's habitual residence:**    **Address of foreign representative(s):**

_____    _____
Number    Street                          Number    Street

_____    _____
P.O. Box                                  P.O. Box

_____    _____
City    State/Province/Region    ZIP/Postal Code    City    State/Province/Region    ZIP/Postal Code

_____    _____
Country                                   Country

---

**10. Debtor's website** (URL)    _____

---

**11. Type of debtor**    *Check one:*

❑ Non-individual (*check one*):

❑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

❑ Partnership

❑ Other.  Specify: _____

❑ Individual

---

| Debtor | | Case number *(if known)* |
|---|---|---|
| | Name | |

---

**12. Why is venue proper in *this district*?**

Check one:

❏ Debtor's principal place of business or principal assets in the United States are in this district.

❏ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____.

❏ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____.

---

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____    _____
Signature of foreign representative    Printed name

Executed on  _____
                      MM  / DD / YYYY

✗ _____    _____
Signature of foreign representative    Printed name

Executed on  _____
                      MM  / DD / YYYY

---

**14. Signature of attorney**

✗ _____    Date  _____
Signature of Attorney for foreign representative                   MM    / DD / YYYY

_____
Printed name

_____
Firm name

_____
Number        Street

_____    _____
City                                                        State        ZIP Code

_____    _____
Contact phone                                          Email address

_____
Bar number                                              State

---

### Schedule 1

**Edcon Limited**
**Corporate Ownership Statement**


In compliance with the with the requirements of Bankruptcy Rule 1007(a)(4)(A), the following is the corporate ownership statement of the debtor, Edcon Limited (the "Debtor"), identifying any corporation that directly or indirectly owns 10% or more of any class of the Debtor's equity interests:

- Edgars Consolidated Stores Limited, a company organized under the laws of the Republic of South Africa, directly owns 100% of the Debtor.

For the Court's convenience, a corporate structure chart is included herewith.



*Debt figures based on unaudited company accounts as of 30 November 2016.*

## <u>Schedule 2</u>

**Others Entitled to Notice**

<u>All persons or bodies authorized to administer foreign proceedings of the debtor</u>

Charles Mzwandile Visiki, General Counsel and Secretary
Edcon Holdings Limited

<u>All parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition</u>

N/A

<u>All entities against whom provisional relief is beign sought under § 1519 of the Bankruptcy Code</u>

N/A

## <u>EDCON LIMITED</u>

December 13, 2016

I, Mr. Charles Mzwandile Vikisi, Secretary of Edcon Limited (the "<u>Company</u>"), do hereby certify the following:

1.    I am the duly qualified and appointed Secretary of the Company.

2.    Attached hereto as **<u>Exhibit A</u>** is a true, correct, and complete copy of the resolutions (the "<u>Resolutions</u>"), which authorize the commencement of proceedings under chapter 15 of the U.S. Bankruptcy Code (the "<u>Chapter 15 cases</u>"), duly adopted by the board of directors of the Company acting pursuant to the Company's bylaws (as amended, amended and restated, modified, supplemented, or replaced from time to time, the "<u>Bylaws</u>").

3.    Attached hereto as **<u>Exhibit B</u>** is a true, correct, and complete copy of the resolutions (the "<u>Resolutions</u>"), which appoint me as foreign representative for the Chapter 15 cases, duly adopted by the board of directors of the Company acting pursuant to the Bylaws.

4.    The Resolutions are not inconsistent with the Bylaws.

5.    The Resolutions have not been amended, modified, repealed, or rescinded since adopted, and are in full force and effect on and as of the date hereof.

[Signature page follows]

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the date first written above.

By:     */s/ Charles Mzwandile Vikisi*

Name:   Charles Mzwandile Vikisi

Title:    Corporate Secretary

**<u>EXHIBIT A</u>**

**EDCON LIMITED**

(Registration No. 2007/003525/06)

(the "**Company**")

---

### ROUND ROBIN RESOLUTIONS OF THE BOARD OF DIRECTORS OF THE COMPANY

---

We, the persons whose names appear below and who have signed this document (or other documents in the same form) are the directors ("**Directors**") of the Company and we hereby resolve that the following resolutions are passed as written resolutions in accordance with the memorandum of incorporation ("**MOI**") of the Company and section 74 of the Companies Act, 2008 (the "**Companies Act**"), and further agree that they shall be as valid and as effective as if they had been passed at a meeting of directors duly convened, constituted and held.

**WHEREAS:**

1. Edcon Holdings Limited (Registration Number 2006/036903/06) ("**Holdco**"), together with its subsidiaries ("**Subsidiaries**"), intends to undergo a corporate and financial restructuring ("**Financial Restructuring**"), which will include, *inter alia*, the launching of comprise proceedings instituted or to be instituted in terms of section 155 of the Companies Act (the "**Compromise Proceedings**") and the filing of a recognition proceeding (the "**Chapter 15 Proceeding**") in the United States Bankruptcy Court for the Southern District of New York for the Company to obtain recognition of the Compromise Proceedings as foreign main proceedings under chapter 15 of title 11 of the United States Code and in accordance with the compromise proposal (as read with the supporting explanatory statement and other supporting documents, the "**Compromise Proposal**").

2. The Financial Restructuring is intended to be implemented in accordance with the terms and conditions contained in the restructuring agreement made between, among others, (i) Holdco, (ii) the Company, (iii) Edcon Acquisitions Proprietary Limited ("**Bidco**"), (iv) Edgars Consolidated Stores Limited ("**ECSL**"), (v) the RCF Lenders (as defined therein), (vi) the Super Senior Secured Liquidity Facility Lenders (as defined therein), (vii) the Super Senior Second Ranking Creditors (as defined therein), (viii) the Senior Secured Creditors (as defined therein), (ix) the Super Senior Third Ranking Creditors (as defined therein), (x) Lucid Issuer Services Limited as information agent, (xi) K2016470295 (South Africa) Proprietary Limited, (xii) K2016470260 (South Africa) Limited ("**New Holdco 1**"), (xiii) K2016470219 (South Africa) Limited ("**New Holdco 2**") and (xiv) certain other entities as set out and defined therein (such agreement, including all of its schedules, the "**Restructuring Agreement**").

3.   The Financial Restructuring is further described in, amongst other things, the steps plan ("**Steps Plan**") (which is schedule 1 to the Restructuring Agreement).  The Steps Plan sets out the various steps ("**Steps**") which need to be taken by the various parties to the Restructuring Agreement.

4.   A copy of the Restructuring Agreement, the Compromise Proposal, the Steps Plan, the Amendment Deed to the Lock-Up Agreement (3 October 2016) and, for the avoidance of doubt, the Implementation Documents (as defined in the Restructuring Agreement) (hereinafter referred to as the "**Relevant Documents**") have been circulated to each of the Directors. By executing this document, each Director acknowledges that he/she has familiarised himself/herself with the Steps of the Financial Restructuring, such Steps which are not repeated here.

5.   The Company may, by entering into and giving effect to the Financial Restructuring as a whole:

   5.1.    provide financial assistance ("**Financial Assistance**") within the meaning of sections 44 and/or 45 of the Companies Act; and

   5.2.    make distributions ("**Distributions**") within the meaning of section 46 of the Companies Act.

6.   The Directors have considered all reasonably foreseeable financial circumstances of the Company so as to satisfy themselves of the solvency and liquidity of the Company immediately after providing the Financial Assistance or the Distributions, as the case may be, in accordance with sections 4, 44, 45 and 46 of the Companies Act, for purposes of which the Directors have considered the following information, namely:

   6.1.    the most recent financial statements of the Company, which financial statements satisfy the requirements of section 29 of the Companies Act;

   6.2.    the most recent accounting records of the Company, which accounting records satisfy the requirements of section 28 of the Companies Act; and

   6.3.    the fair value of the Company's assets and liabilities, including any reasonably foreseeable contingent assets and liabilities.

7.   The sole shareholder of the Company has or will adopt a special resolution ("**Financial Assistance Special Resolution**") providing the Company with the authority to provide the Financial Assistance, subject to compliance with the requirements of the Company's MOI and the Companies Act.

8.   The issue by the Company of shares ("**Issue Shares**") to its sole shareholder, ECSL (hereinafter also referred to as the "**Subscriber**") as contemplated in the applicable Relevant Documents may amount to an issue of shares to a related person as contemplated in section 41(1)(b) of the Companies Act.  The implementation of the applicable Relevant Documents is consequently conditional on the sole shareholder of the Company, being ECSL, approving the issue of the Issue

Shares to the Subscriber by way of a special resolution (the "**Section 41(1) Shareholders Resolution**").

9.    The issue by the Company of the Issue Shares to the Subscriber as contemplated in the applicable Relevant Documents may amount to an issue of shares equal to or in excess of the 30% threshold described in section 41(3) of the Companies Act. The implementation of the applicable Relevant Documents is consequently conditional on the sole shareholder of the Company, namely ECSL, approving the issue of the Issue Shares to the Subscriber by way of a special resolution (the "**Section 41(3) Shareholders Resolution**").

**NOW THEREFORE IT IS RECORDED THAT:**

10.   For purposes of section 75 of the Companies Act, save as disclosed in paragraphs 15 to 13 below, each Director has confirmed that neither he/she nor, to his/her knowledge, any related person (as defined by section 1 read together with section 75(1)(b) of the Companies Act) has a personal financial interest in the matters decided in the written resolutions below which he/she is required by section 75 of the Companies Act or the MOI of the Company to disclose, and which prohibits him/her from taking part in the consideration of such matters, other than those matters which have already been disclosed in writing in accordance with section 75(4) of the Companies Act.

11.   Bernard Joseph Brookes, a Director of the Company, has disclosed that certain related parties, being Holdco, ECSL, New Holdco 1, New Holdco 2 and Bidco, each have a personal financial interest in some of the matters to be considered in the resolutions below.

12.   Urin Ferndale, a Director of the Company, has disclosed that a related party, being Holdco, has a personal financial interest some of in the matters to be considered in the resolutions below.

13.   Richard Vaughan, a Director of the Company, has disclosed that certain related parties, being Holdco, Bidco, ECSL, Newshelf 1303 Proprietary Limited, Newshelf 1304 Proprietary Limited, New Holdco 1 and New Holdco 2, each have a personal financial interest in some of the matters to be considered in the resolutions below.

14.   Each of the Directors of the Company have disclosed a personal financial interest in some of the matters to be considered, they wish to resolve to approve the decisions contained herein and detailed below, in accordance with section 75 of the Companies Act, and will disclose the aforementioned interest to its sole shareholder, being ECSL, to approve same by way of ordinary resolution, as is required by section 75 of the Companies Act.

15.   Accordingly, subject to the necessary shareholder approvals being obtained, the Directors wish to authorise the Company to:

15.1.   enter into and perform its obligations under any and all agreements and/or documents required, necessary and/or desirable to consummate the Financial Restructuring, including the execution of the Relevant Documents;

15.2.   provide the Financial Assistance, in compliance with the requirements of sections 4, 44, and 45 of the Companies Act;

15.3.   make the Distributions, in compliance with the requirements of sections 4 and 46 of the Companies Act;

15.4.   issue the Issue Shares to the Subscriber at adequate consideration, as contemplated in the applicable Relevant Documents, in compliance with the requirements of sections 38(1), 41(1)(b) and 41(3) of the Companies Act, respectively;

15.5.   submit certain shareholder resolutions to ECSL, being the sole shareholder, for approval;

15.6.   authorise and empower any Director to do all such things necessary to sign, enter in and implement the Approved Documents (as defined below);

15.7.   authorise the voluntary winding up of Newshelf 1303 Proprietary Limited (Registration No. 2015/166641/07) ("**Restricted Newco**");

15.8.   authorise the commencement of the Chapter 15 Proceeding; and

15.9.   ratify all actions already taken in relation to the Approved Documents (as defined below).

**IT IS HEREBY RESOLVED THAT:**

**RESOLUTION NUMBER 1:** *Entry into and Performance of Documents*

16.   The Company be and is hereby authorised to:

16.1.   enter into and perform its obligations under any and all agreements and/or documents required, necessary and/or desirable to consummate the Financial Restructuring and the Compromise Proposal (the documents required, necessary and/or desirable to consummate the Financial Restructuring being, amongst other things, the Relevant Documents); and

16.2.   enter into and perform its obligations under any other ancillary documents required, necessary and/or desirable in connection with the consummation of the transactions contemplated by the Relevant Documents, to be concluded by the Company from time to time, on the terms and conditions contained the Relevant Documents,

(collectively, the "**Approved Documents**"), in substantially the same form as the drafts thereof circulated to the Directors simultaneously with these resolutions; and

16.3.   perform any other required, appropriate or desirable actions and formalities in connection with the Approved Documents.

**RESOLUTION NUMBER 2:** *Financial Assistance and Distributions*

Financial Assistance

17.   The Directors hereby authorise, pursuant to the Financial Assistance Special Resolution and in terms of section 44(2) of the Companies Act, the Company to provide Financial Assistance to any person arising under, to the extent applicable, any of the Approved Documents, as may be required to give effect to the Financial Restructuring.

18.   In terms of and pursuant to the provisions of section 44(3)(b) of the Companies Act, the Directors hereby confirm that they are satisfied that after considering all reasonably foreseeable financial circumstances of the Company and the information referred to in paragraph 6 above, immediately after providing the Financial Assistance as contemplated in paragraph 17 above:

18.1.   the assets of the Company (fairly valued) will equal or exceed the liabilities of the Company (fairly valued) (taking into consideration reasonably foreseeable contingent assets and liabilities of the Company);

18.2.   it appears that the Company will be able to pay its debts as they become due in the ordinary course of business for a period of 12 (twelve) months after the date of this resolution;

18.3.   the terms under which the Financial Assistance is provided, are fair and reasonable to the Company; and

18.4.   all relevant conditions and restrictions (if any) relating to the granting of Financial Assistance by the Company contained in the MOI of the Company have been satisfied.

19.   The Directors hereby authorise, pursuant to the Financial Assistance Special Resolution and in terms of section 45(2) of the Companies Act, the Company to provide Financial Assistance to any "related or inter-related company" (as that term is contemplated in the Companies Act) of the Company, arising under, to the extent applicable, any of the Approved Documents.

20.   In terms of and pursuant to the provisions of section 45(3)(b) of the Companies Act, the Directors hereby confirm that they are satisfied that after considering all reasonably foreseeable financial circumstances of the Company, immediately after providing the Financial Assistance:

20.1.   the assets of the Company (fairly valued) will equal or exceed the liabilities of the Company (fairly valued) (taking into consideration reasonably foreseeable contingent assets and liabilities of the Company);

20.2.  it appears that the Company will be able to pay its debts as they become due in the ordinary course of business for a period of 12 (twelve) months after the date of this resolution;

20.3.  the terms under which the Financial Assistance is provided, are fair and reasonable to the Company; and

20.4.  all relevant conditions and restrictions (if any) relating to the granting of Financial Assistance by the Company contained in the MOI of the Company have been satisfied.

21.  Written notice of the Financial Assistance shall be provided to the shareholder(s) of the Company and the relevant trade unions (if required), within the required statutory period.

Distributions

22.  The Directors hereby authorise the Company to make Distributions under, to the extent applicable, any of the Approved Documents.

23.  In terms of and pursuant to the provisions of section 46(1)(c) of the Companies Act, the Directors hereby confirm that they have applied the solvency and liquidity test as set out in section 4 of the Companies Act and they are satisfied that after considering all reasonably foreseeable financial circumstances of the Company, immediately after completing the Distribution contemplated in paragraph 22 above:

23.1.  the assets of the Company (fairly valued) will equal or exceed the liabilities of the Company (fairly valued) (taking into consideration reasonably foreseeable contingent assets and liabilities of the Company); and

23.2.  it appears that the Company will be able to pay its debts as they become due in the ordinary course of business for a period of 12 (twelve) months after the date of the Distribution.

**RESOLUTION NUMBER 3: *Issue of Issue Shares to Subscriber***

24.  Subject to the relevant time as set out in the Restructuring Agreement occurring and the passing of the Section 41(1) Shareholders Resolution and Section 41(3) Shareholders Resolution, the Company be and is hereby authorised, in terms of section 38(1) of the Companies Act, to allot and issue the Issue Shares to the Subscriber in accordance with the terms and conditions contained in the applicable Relevant Documents.

**RESOLUTION NUMBER 4: *Adequate Consideration in respect of the Issue Shares***

25.  The consideration to be paid by the Subscriber to the Company in respect of the subscription for the shares so subscribed for by the Subscriber is adequate consideration, as contemplated in

section 40(1)(a) of the Companies Act, having regard to the Company's assets and liabilities and the terms of the applicable Relevant Document.

**RESOLUTION NUMBER 5: *Restricted Newco Winding Up***

26.   In order to authorise the voluntary winding up of Restricted Newco as contemplated in section 80(1) of the Companies Act and in the applicable Relevant Document, the Company, in its capacity as the sole shareholder of Restricted Newco, hereby authorises any Director to execute the shareholders resolution to be submitted to it by the board of directors of Restricted Newco for this purpose.

**RESOLUTION NUMBER 6: *Section 41(1) Shareholders Resolution***

27.   The Company submits, which it hereby does, the Section 41(1) Shareholders Resolution to ECSL, being its sole shareholder, for its consideration and the Directors, acting in what they believe to be the best interests of the Company, hereby propose that ECSL votes in favour of and adopts the Section 41(1) Shareholders Resolution.

**RESOLUTION NUMBER 7: *Section 41(3) Shareholders Resolution***

28.   The Company submits, which it hereby does, the Section 41(3) Shareholders Resolution to ECSL, being its sole shareholder, for its consideration and the Directors, acting in what they believe to be the best interests of the Company, hereby propose that ECSL votes in favour of and adopts the Section 41(3) Shareholders Resolution.

**RESOLUTION NUMBER 8: *Authorisation***

29.   Any 1 (one) Director (or her/his duly authorised alternate), from time to time, in her/his capacity as a Director, be and is hereby authorised and empowered to:

29.1.   negotiate, amend, vary and settle all the terms and conditions of, and sign and enter into:

29.1.1.   the Approved Documents;

29.1.2.   any other documents or powers of attorney which may be necessary for the implementation of the Approved Documents;

29.1.3.   any other documents and notices to be signed and/or despatched by/or on behalf of the Company under or in connection with the Approved Documents,

provided that no amendments made to the Approved Documents (as contemplated above) will result in a material variation of the terms and conditions of the Approved Documents which have been circulated to the Directors simultaneously with these resolutions and

29.2.   generally do everything reasonably required or necessary for the implementation of the Approved Documents;

30.   The Company is authorised to appoint any person(s) to act as its agent in connection with any of the Approved Documents, to the extent necessary, required and/or desirable in order to consummate the Financial Restructuring.

31.   Any agreement or document signed by the person(s) referred to in this Resolution Number 8 and purporting to act under authority of these resolutions shall conclusively be deemed against the Company to be the agreement or document authorised in terms hereof and to have been entered into and signed pursuant hereto.

**RESOLUTION NUMBER 9: *Chapter 15 Proceeding***

28   The appropriate notices, applications, and filings in connection with the Chapter 15 Proceeding for the Company are hereby authorized and approved.

**RESOLUTION NUMBER 10: *Ratification***

29.   To the extent necessary, the Company hereby ratifies all or any actions which the person(s) referred to in Resolution Number 8 above may already have taken in relation to the Approved Documents and any other agreements and documents referred to above.

30.   To the extent necessary, the board of directors of the Company hereby ratifies, all actions which the Company has taken, including, but not limited to the entry by the Company into any and all agreements and/or documents necessary, ancillary, and/or desirable in connection with the Financial Restructuring.

**Counterparts**

Notwithstanding that no meeting of the Company may have been held, these round robin resolutions may be signed in counterparts.

Name:  Urin Ferndale

Capacity: Director

Date:

Name: Richard Vaughan

Capacity: Director

Date:

_____

**Name: Bernard Joseph Brookes**

**Capacity: Director**

**Date:**

**EXHIBIT B**

**ROUND ROBIN RESOLUTIONS OF THE BOARD OF DIRECTORS OF EDCON LIMITED**

**(REGISTRATION NO. 2007/003525/06) (the "Company")**

We, the persons whose names appear below and who have signed this document (or other documents in the same form) are the directors of the Company and we hereby resolve that the following resolutions are passed as written resolutions in accordance with the memorandum of incorporation of the Company and section 74 of the Companies Act, 2008 (the "**Companies Act**"), and further agree that they shall be as valid and as effective as if they had been passed at a meeting of directors duly convened, constituted and held.

**WHEREAS:**

The Company wishes to conclude the transactions broadly described in the term sheets attached hereto as **Annexure A** (*Project Ellis: Restructuring Commercial Heads of Terms*) and/or the steps plan attached hereto as **Annexure B** (*Project Ellis: Financial Restructuring Lock-up Agreement steps plan*) and/or the agreement attached hereto as **Annexure C** (*Lock-up Agreement*) (together, the "**Restructuring**").

**NOW THEREFORE IT IS RECORDED THAT:**

For purposes of section 75 of the Companies Act, each director has confirmed that neither he/she nor, to his/her knowledge, any related person (as defined by section 1 read together with section 75(1)(b) of the Companies Act) has a personal financial interest in the matters decided in the written resolutions below which he/she is required by section 75 of the Companies Act or the Memorandum of Incorporation of the Company to disclose, other than those matters which have already been disclosed.

**IT IS HEREBY RESOLVED THAT:**

1. **RESOLUTION NO. 1: Entry Into and Performance of Documents**

   The Company hereby approves the terms of, and the transactions contemplated by, any and all agreements and/or documents required, necessary and/or desirable to consummate the Restructuring (the "**Relevant Documents**") and the Company be and is hereby authorised to:

   1.1.   enter into, execute, deliver and perform its obligations under the Relevant Documents; and

   1.2.   enter into, execute, deliver and perform its obligations under any other ancillary documents required, necessary and/or desirable in connection with the consummation of the transactions contemplated by the Relevant Documents, to be concluded by the Company from time to time, on the terms and conditions contained the Relevant Documents,

   (collectively, the "**Approved Documents**"); and

1.3.    perform any other required, appropriate or desirable actions and formalities in connection with the Approved Documents.

**IT IS FURTHER RESOLVED THAT:**

2.    **RESOLUTION NO. 2: Acceptance as Agent**

The board of directors of the Company be appointed, and hereby accepts appointment, to act as the agent of Edcon Holdings Limited, Edcon Acquisitions Proprietary Limited and Edgars Consolidated Stores Limited on the terms more fully set out in each of such entities' board resolutions passed contemporaneously with this board resolution.

**IT IS FURTHER RESOLVED THAT:**

3.    **RESOLUTION NO. 3: Transaction Committee**

The board of directors of the Company hereby appoints and constitutes a committee of the board of directors of the Company to be known as the "**Transaction Committee**" consisting of the members of the current Transaction Committee of Edcon Holdings Limited from time to time on the terms, and in accordance with (insofar as is practical), the transaction committee charter attached to this document as **Annexure D** (*Transaction Committee Charter*) (on the basis that all references to Edcon Holdings Limited shall be deemed to be references to the Company) and hereby delegates to such committee, the authority of the board of directors of the Company as is set out therein.

**IT IS FURTHER RESOLVED THAT:**

4.    **RESOLUTION NO. 4: Authority of the Transaction Committee**

The board of directors of the Company hereby authorises and appoints the Transaction Committee to act as the agent for and on behalf of the Company in relation to all actions which, if taken by the Transaction Committee pursuant to or in connection with the Approved Documents, may impact and/or have an effect on the Company ("**Designated Actions**") on the basis that –

4.1.    prior to taking any such Designated Actions, the Transaction Committee shall be obliged to consult with and obtain the approval of the board of the Company and the board of Edcon Holdings Limited, in relation to such Designated Actions; and

4.2.    once such Designated Actions are approved and taken as aforesaid, would have the effect as if such Designated Actions had been expressly taken by the Company or concurred with it.

Nothing in this resolution shall detract from or prevent the board of directors of the Company or the Company from taking any Designated Actions itself.

**IT IS FURTHER RESOLVED THAT:**

5.       **RESOLUTION NO. 5:  Chapter 15**

Charles Vikisi (or any person nominated by him from time to time) be and is hereby authorised and appointed as the foreign representative on behalf of the Company for purposes of Chapter 15 of the United States Bankruptcy Code in relation to the Approved Documents to –

5.1.       sign any and all documents in relation to Chapter 15 of the United States Bankruptcy Code and sign and/or despatch all documents and notices to be signed and/or despatched under or in connection with such documents and any other documents and/or agreements contemplated therein;

5.2.       sign any and all documents and/or agreements amplifying, amending and/or reinstating any of the aforesaid including without limitation negotiating and/or settling the terms of any such documents or agreements amending, replacing and/or reinstating such documents; and

5.3.       generally do everything that may be necessary for and incidental to the implementation of this resolution.

**IT IS FURTHER RESOLVED THAT:**

6.       **RESOLUTION NO. 6: Authorisation and Delegation**

6.1.       Any 1 (one) director of the Company (or her/his duly authorised alternate or nominee), from time to time, in her/his capacity as director of the Company, be and is hereby authorised and empowered to:

6.1.1.       negotiate, amend, vary and settle all the terms and conditions of, and sign, despatch and/or enter into:

6.1.1.1.       the Approved Documents;

6.1.1.2.       any and all documents or powers of attorney which may be necessary for the implementation of the Approved Documents;

6.1.1.3.       any and all documents and notices to be signed and/or despatched by/or on behalf of the Company under or in connection with the Approved Documents; and

6.1.2.       generally do everything reasonably required or necessary for the implementation of the Approved Documents in each case in such manner or form as that director may in his or her absolute discretion think fit.

6.2. The Company is authorised to appoint any person(s) to act as its agent in connection with any of the Approved Documents, to the extent necessary, required and/or desirable in order to consummate the Restructuring.

6.3. Any agreement or document signed by the person(s) referred to in this paragraph 6 and purporting to act under authority of these resolutions shall conclusively be deemed against the Company to be the agreement or document authorised in terms hereof and to have been entered into and signed pursuant hereto.

**IT IS FURTHER RESOLVED THAT:**

7. **RESOLUTION NO. 7: Ratification**

7.1. To the extent necessary, the Company hereby ratifies all or any actions which the person(s) referred to in paragraph 6 above may already have taken in relation to the Approved Documents and any other agreements and documents referred to above.

7.2. To the extent necessary, the board of directors of the Company hereby ratifies, all actions which the Company has taken, including, but not limited to the entry by the Company into any and all agreements and/or documents necessary, ancillary, and/or desirable in connection with the Restructuring.

8. <u>**Counterparts**</u>

Notwithstanding that no meeting of the Company may have been held, these round robin resolutions may be signed in counterparts and shall become effective once a counterpart has been signed by a majority of the directors of the Company.

*[The remainder of this page intentionally left blank; Signature page follows.]*

**Name:  Bernard Joseph Brookes**

**Capacity: Director**

**Date:** 14-/09/2016

**Name: Richard Vaughan**

**Capacity: Director**

**Date:** 14/09/2016

**Name: Urin Ferndale**

**Capacity: Director**

**Date:** 14/09/2016

*[Signature page to Edcon Limited board resolution]*

**<u>COMPROMISE NOTICES</u>**

**EDCON LIMITED**

Incorporated in South Africa

(Registration number: 2007/003525/06)

_____

**NOTICE BY THE BOARD OF DIRECTORS OF THE COMPANY TO THE SENIOR SECURED CREDITORS OF THE SENIOR SECURED COMPANY MEETING**

_____

1.      Where appropriate and applicable, the terms defined in the Proposal Document to which this notice is attached and forms part of, will bear the same meanings in this notice and, in particular, in the resolution set out below.

2.      Notice is hereby given to all Senior Secured Creditors of the Company and to the Commission in terms of section 155(2) of the Companies Act that a meeting of the Senior Secured Creditors, under the chairmanship of the Chairman, will be held at the offices of Edward Nathan Sonnenbergs, 150 West Street, Sandton, Gauteng  at 12h00 (Johannesburg time) on 29 December  2016 for the purpose of considering, and if deemed fit, approving the Senior Secured Company Resolution more fully set out below with or without modification.

3.      The meeting will commence with an explanatory address by the Chairman.

4.      All Senior Secured Creditors (including their proxies) are required to provide reasonably satisfactory identification before being entitled to attend or participate in the Senior Secured Company Meeting.  Forms of identification include valid identity documents, driver's licenses and passports.

5.      A Person that is not a Senior Secured Creditor, or does not hold a valid proxy for any Senior Secured Creditor, will not be permitted access to the Senior Secured Company Meeting, save with the consent of the Chairman.

**RESOLUTION – APPROVAL OF THE SENIOR SECURED COMPANY COMPROMISE IN TERMS OF SECTION 155(6) OF THE COMPANIES ACT**

"*Resolved that the Senior Secured Company Compromise by the Company as set out in the Company Proposal at page 763 be and is hereby approved by the Senior Secured Creditors in terms of section 155(6) of the Companies Act on the basis that the Senior Secured Company Compromise will take effect on and as from the Compromise Effective Date.*"

The Senior Secured Company Compromise will have been adopted by the Senior Secured Creditors if it is approved by a majority in number of the Senior Secured Creditors representing at least 75% (seventy five percent) of the aggregate principal amount of the Compromise Claims outstanding at the Record Date or DTC Record Date (as the case may be) held by Senior Secured Creditors who are present and voting in person or by proxy at the Senior Secured Company Meeting.

6.     Proxy Form:

6.1.     Each Senior Secured Term Loan Lender must ensure that if it does not intend to attend (or have its Designated Recipient attend) the Senior Secured Company Meeting, a Proxy Form is completed, executed and delivered to the Information Agent before the Voting Instruction Deadline in order for it (or, if applicable, its Designated Recipient) to vote.

6.2.     If a Compromise Lender is both a Senior Secured Term Loan Lender and a Super Senior Term Loan Lender, it must submit **one** Proxy Form as regards all its Compromise Claims.

6.3.     Senior Secured Term Loan Lenders requiring any assistance in completing a Proxy Form should contact the Information Agent using the contact details in the Proxy Form.

6.4.     The Proxy Form is attached to this Proposal Document at page 678.

6.5.     You may use one Proxy Form for all Compromise Meetings.

6.6.     It is important that you read the Proposal Document (including the Proxy Form and the Explanatory Statement) carefully for information about the Senior Secured Company Compromise and that you complete and return the Proxy Form in accordance with the instructions contained in it.

7.     Account Holder Letter:

7.1.     Each Senior Secured Noteholder must ensure that an Account Holder Letter is completed, executed and delivered to and received by the Information Agent before the Voting Instruction Deadline in order for it (or, if applicable, its Designated Recipient) to vote.

7.2.     If a Senior Secured Noteholder holds Senior Secured 2018 Notes and Senior Secured 2019 Notes, it must submit **one** Account Holder Letter for all Compromise Notes that it holds per Account Holder.  If a Secured Noteholder also holds Super

Senior 2019 Notes, it will still only submit **one** Account Holder Letter per Account Holder in respect of both its Senior Secured Notes and its Super Senior 2019 Notes.

7.3.   You may use one Account Holder Letter for all Compromise Meetings.

7.4.   Account Holders requiring any assistance in completing Account Holder Letters should contact the Information Agent using the contact details in the Account Holder Letter.

7.5.   The Account Holder Letter is attached to this Proposal Document at page 718.

7.6.   In relation to the Senior Secured Noteholders only, whether or not you intend to attend the Senior Secured Company Meeting, you are requested to ensure that your Account Holder completes, executes and returns the Account Holder Letter in the Proposal Document in accordance with the instructions printed thereon as soon as possible.

7.7.   It is important that you read the Account Holder Letter carefully for information about the Senior Secured Company Compromise and that you complete and return it in accordance with the instructions contained in it.

8.   Copies of the following documents will be available for inspection at the offices of  Edward Nathan Sonnenbergs, 150 West Street, Sandton (contact Jaslin Pritipaul on +27 11 269 7813 or +27 82 560 5834 or jpritipaul@ensafrica.com to make arrangements) during normal business hours (being 08h30 – 17h00) (Johannesburg time) on Business Days up to, and including the Business Day immediately preceding the date of the Senior Secured Company Meeting –

8.1.   the Lock-Up Agreement;

8.2.   the Amendment Agreement;

8.3.   the Accession Letter;

8.4.   the Existing Intercreditor Agreement;

8.5.   the Senior Secured 2018 Notes Indenture;

8.6.   the Senior Secured 2019 Notes Indenture; and

8.7.   the Senior Secured Term Loan Agreement.

By order of the board of directors of the Company

**RICHARD VAUGHAN, CHIEF FINANCIAL OFFICER**

on behalf of the board of directors of

**EDCON LIMITED**

12 December 2016

**EDCON LIMITED**

Incorporated in South Africa

(Registration number: 2007/003525/06)

_____

**NOTICE BY THE BOARD OF DIRECTORS OF THE COMPANY TO THE SUPER SENIOR THIRD RANKING CREDITORS OF THE SUPER SENIOR COMPANY MEETING**

_____

1.  Where appropriate and applicable, the terms defined in the Proposal Document to which this notice is attached and forms part of, will bear the same meanings in this notice of meeting and, in particular, in the resolution set out below.

2.  Notice is hereby given to all Super Senior Third Ranking Creditors of the Company and to the Commission in terms of section 155(2) of the Companies Act that a meeting of the Super Senior Third Ranking Creditors, under the chairmanship of the Chairman, will be held at the offices of Edward Nathan Sonnenbergs, 150 West Street, Sandton, South Africa at 14h00 (Johannesburg time) on 29 December 2016, or as soon as the Senior Secured Holdco Meeting convened for the same date and place is concluded or adjourned, for the purpose of considering, and if deemed fit, the Super Senior Company Resolution more fully set out below with or without modification.

3.  The meeting will commence with an explanatory address by the Chairman.

4.  All Super Senior Third Ranking Creditors (including their proxies) are required to provide reasonably satisfactory identification before being entitled to attend or participate in the Super Senior Company Meeting.  Forms of identification include valid identity documents, driver's licenses and passports.

5.  A Person that is not a Super Senior Third Ranking Creditor, or does not hold a valid proxy for any Super Senior Third Ranking Creditor, will not be permitted access to the Super Senior Company Meeting, save with the consent of the Chairman.

**RESOLUTION – APPROVAL OF THE SUPER SENIOR COMPANY COMPROMISE IN TERMS OF SECTION 155(6) OF THE COMPANIES ACT**

"*Resolved that the Super Senior Company Compromise by the Company as set out in the Company Proposal at page 763 be and is hereby approved by the Super Senior Third Ranking Creditors in*

*terms of section 155(6) of the Companies Act on the basis that the Super Senior Company Compromise will take effect on and as from the Compromise Effective Date.*"

The Super Senior Company Compromise will have been adopted by the Super Senior Third Ranking Creditors if it is approved by a majority in number of the Super Senior Third Ranking Creditors representing at least 75% (seventy five percent) of the aggregate principal amount of the Compromise Claims outstanding at the Record Date  held by Super Senior Third Ranking Creditors who are present and voting in person or by proxy at the Super Senior Company Meeting.

6.    Proxy Form:

6.1.    Each Super Senior Term Loan Lender must ensure that if it does not intend to attend (or have its Designated Recipient attend) the Super Senior Company Meeting, a Proxy Form is completed, executed and delivered to the Information Agent before the Voting Instruction Deadline in order for it (or, if applicable, its Designated Recipient) to vote.

6.2.    If a Compromise Lender is both a Senior Secured Term Loan Lender and a Super Senior Term Loan Lender, it must submit one Proxy Form as regards all its Compromise Claims.

6.3.    You may use one Proxy Form for all Compromise Meetings.

6.4.    Super Senior Term Loan Lenders requiring any assistance in completing a Proxy Form should contact the Information Agent using the contact details in the Proxy Form.

6.5.    The Proxy Form is attached to this Proposal Document at page 678.

6.6.    It is important that you read the Proxy Form carefully for information about the Super Senior Company Compromise and that you complete and return it in accordance with the instructions contained in it.

7.    Account Holder Letter:

7.1.    Each Super Senior 2019 Noteholder must ensure that an Account Holder Letter is completed, executed and delivered to and received by the Information Agent before the Voting Instruction Deadline in order for it (or, if applicable, its Designated Recipient) to vote.

7.2.    If a Super Senior 2019 Noteholder holds Super Senior 2019 Notes and Senior Secured Notes, it must only submit **one** Account Holder Letter per Account Holder for Compromise Notes that it holds.

7.3.    You may use one Account Holder Letter for all Compromise Meetings.

7.4.    Account Holders requiring any assistance in completing Account Holder Letters should contact the Information Agent using the contact details in the Account Holder Letter.

7.5.    The Account Holder Letter is attached to this Proposal Document at page 718.

7.6.    In relation to the Super Senior 2019 Noteholders only, whether or not you intend to attend the Super Senior Company Meeting, you are requested to ensure that your Account Holder completes, executes and returns the Account Holder Letter which accompanies this Proposal Document in accordance with the instructions printed thereon as soon as possible.

7.7.    It is important that you read the Account Holder Letter carefully for information about the Super Senior Company Compromise and that you complete and return it in accordance with the instructions contained in it.

8.    Copies of the following documents will be available for inspection at the office of Edward Nathan Sonnenbergs, 150 West Street, Sandton (contact Jaslin Pritipaul on +27 11 269 7813 or +27 82 560 5834 or jpritipaul@ensafrica.com to make arrangements)during normal business hours (being 08h30 – 17h00) (Johannesburg time) on Business Days up to, and including the Business Day immediately preceding the date of the Super Senior Company Meeting–

8.1.    the Lock-Up Agreement;

8.2.    the Amendment Agreement;

8.3.    the Accession Letter;

8.4.    the Existing Intercreditor Agreement;

8.5.    the Super Senior 2019 Notes Indenture; and

8.6.    the Super Senior Term Loan Agreement.

By order of the board of directors of the Company

RICHARD VAUGHAN, CHIEF FINANCIAL OFFICER

on behalf of the board of directors of

**EDCON LIMITED**

12 December 2016

**HIGH COURT OF SOUTH AFRICA ORDERS**

*IN THE HIGH COURT OF SOUTH AFRICA*
*GAUTENG LOCAL DIVISION, JOHANNESBURG*

CASE NO:    **2016/14354**
P/H NO:    **0**

*JOHANNESBURG, 03 May 2016*
*BEFORE THE HONOURABLE JUDGE WEINER*

*In the ex-parte application of:-*

**EDCON LIMITED**                          1st *Applicant*
**EDCON HOLDINGS LIMITED**                 2nd *Applicant*
**EDGARS CONSOLIDATED STORES LIMITED**     3rd *Applicant*
**EDCON ACQUISITION (PTY) LIMITED**        4th *Applicant*

*HAVING read the documents filed of record and having considered the matter:-*

*IT IS ORDERED THAT:-*

1.    *The Applicants are authorised to deliver the proposed compromises or any future compromises ("Compromises") to be made by the board of directors of each applicant in terms of section 155 of the Companies Act 71 of 2008, as amended, between each such Applicant and the holders of the 2018 Notes (including the beneficial holders of the 2018 Notes) issued in terms of an indenture dated 11 March 2011, by:*

   1.1.    *the Applicants or their agent transmitting by electronic transmission a copy of the Proposal Documents to each of Euroclear Bank SA/NV ("Euroclear"), Clearstream Banking Société Anonyme ("Clearstream"), the Depository Trust Company ("DTC") (Euroclear, Clearstream and DTC collectively as the "Clearing Systems"), The Bank of New York Depository (Nominees) Limited (as registered holder of 2018 Notes), Cede & Co (as nominee of DTC in its capacity as a registered holder of 2018 Notes) and The Bank of New York Mellon (as the Trustee in terms of the 2018 Notes); and*

   1.2.    *the Applicants delivering any further notices and documents relating to the Compromises in the same manner as contemplated in 1.1 above.*

**BY THE COURT**

**REGISTRAR**
/gpm

*IN THE HIGH COURT OF SOUTH AFRICA*
*GAUTENG LOCAL DIVISION, JOHANNESBURG*

CASE NO: 2016/32612
P/H NO: 0

*JOHANNESBURG, 11 October 2016*
*BEFORE THE HONOURABLE ACTING JUDGE KUNY*

In the ex parte application of:-

**EDCON LIMITED**                                      1st **Applicant**
**EDCON HOLDINGS LIMITED**                   2nd **Applicant**
**EDGARS CONSOLIDATED STORES LIMITED**   3rd **Applicant**
**EDCON ACQUISITION (PTY) LIMITED**       4th **Applicant**

**HAVING** read the documents filed of record and having considered the matter:-

**IT IS ORDERED THAT:-**

1.    The Applicants are authorised to deliver the proposed compromises ("Compromises") to be made by the board of directors of each Applicant in terms of Section 155 of the Companies Act 71 of 2008, as amended, between each such Applicant and the holders of the New Senior Secured PIK 2019 Notes (including the beneficial holders of the New Senior Secured PIK 2019 Notes) issued in terms of an indenture dated 27 November 2015 (as supplemented), ("New Senior Secured Proposal Documents"), by:-

   1.1    the Applicants or their agent transmitting by electronic transmission a copy of the New Senior Secured Proposal Documents to each of Euroclear Bank SA/NV ('Euroclear") and Clearstream Banking societe anonyme ("Clearstream")(Euroclear and Clearstream collectively as the "Clearing Systems"), The Bank of New York Mellon (as registered holder of the New Senior Secured PIK 2019 Notes), and The Bank of New York Mellon (as the Trustee in terms of the New Senior Secured PIK 2019 Notes); and

   1.2    the Applicants delivering any further notices and documents relating to the Compromises in the same manner as contemplated in 1.1 above.

2.    The Applicants are authorised to deliver the Compromises to be made by the board of directors of each Applicant in terms of Section 155 of the Companies Act 71 of 2008, as amended, between each such Applicant and the holders of the New Super Senior Secured PIK 2019 Notes (including

the beneficial holders of the New Super Senior Secured PIK 2019 Notes) issued in terms of an indenture dated 29 July 2015 (as supplemented)("New Super Senior Secured Proposal Documents"), by:-

2.1    the Applicants or their agent transmitting by electronic transmission a copy of the New Super Senior Secured Proposal Documents to the Clearing Systems, The Bank of New York Mello (as registered holder of the New Super Senior Secured PIK 2019 Notes), and The Bank of New York Mellon (as the trustee in terms of the New Super Senior Secured PIK 2019 Notes); and

2.2    the Applicants delivering any further notices and documents relating to the Compromises in the same manner as contemplated in 2.1 above.

3.    The Applicants are authorised to deliver the Compromises to be made by the board of directors of each Applicant in terms of Section 155 of the Companies Act 71 of 2008, as amended, between each such Applicant and the holders of the Senior 2019 Notes (including the beneficial holders of the Senior 2019 Notes) issued in terms of an indenture dated 14 November 2013 (as supplemented)("Senior 2019 Proposal Documents"), by:-

3.1    the Applicants or their agent transmitting by electronic transmission a copy of the Senior 2019 Proposal Documents to the Clearing Systems, The Bank of New York Mellon (as registered holder of the Senior 2019 Notes), and The Bank of New York Mellon (as the trustee in terms of the Senior 2019 Notes); and

3.2    the Applicants delivering any further notices and documents relating to the Compromises in the same manner as contemplated in 3.1 above.

4.    The Applicants and their agents shall, in addition deliver by hand a copy of the Proposal Documents, further notices and documents relating to the Compromises to the Clearing Systems and to The Bank of New York Mellon.

**BY THE COURT**

**REGISTRAR**
/sps